UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 10-20458-CR-MARTINEZ

UNITED STATES OF AMERICA,

    Plaintiff,

v.

EUSTORGIO QUIROZ,
    Defendant.
_____/

## REPORT AND RECOMMENDATION

On or about March 31, 2011, court-appointed defense counsel Michael Zelman ("Counsel") submitted a voucher application numbered FLS 10 4480 with appended time sheets requesting $16,064.60 as final payment for attorney's fees and costs pursuant to the Criminal Justice Act (the "CJA"). Counsel also supplied time sheets and a brief letter of explanation dated April 6, 2011 (the "Letter of Explanation") in support of his voucher application. Counsel represented Defendant Eustorgio Quiroz ("Defendant") for nine (9) months from his appointment on June 7, 2011 until March 18, 2011.

Counsel seeks $16,064.60 in his application, an amount which exceeds the $9,700.00 statutory maximum allowed for representation in non-capital felony cases under the CJA. As a result, United States District Court Judge Jose E. Martinez entered an Order of Reference **[DE # 222]** referring the voucher application to the undersigned for a Report and Recommendation as to whether the fees requested by Counsel are appropriate. *See* 28 U.S.C. § 636(a); *see also* United States District Court for the Southern District of Florida Magistrate Judge Rules.

## Criminal Justice Act and Guidelines for Administration of the Criminal Justice Act

The United States Judicial Conference developed the Guidelines for Administering the CJA and Related Statutes (the "Guidelines") to assist courts in the application of the provisions of the CJA. See *In re Burger,* 498 U.S. 233, 234, 111 S.Ct. 628 (1991). In the Guidelines, judges are "urged to compensate counsel at a rate and in an amount sufficient to cover appointed counsel's general office overhead and to ensure adequate compensation for representation provided." See Section §630.20 of the Guidelines.

The CJA at 18 U.S.C. §3006A(d)(1) provides that at the conclusion of CJA representation, an appointed attorney shall be compensated for time expended in court and for time "reasonably expended out of court" and shall be reimbursed "for expenses reasonably incurred." The district court, as the body empowered to "fix" CJA appointed counsel compensation, has the statutory authority and discretion to determine what is a reasonable expense or a reasonable use of billable time. 18 U.S.C. §3006A(d)(5); *U.S. v. Griggs,* 240 F.3d 974, 974 (11th Cir. 2001) (holding that "district courts [alone] are vested with discretion" to make fee determinations under the CJA.") In order for the recommended fee amount to exceed the statutory maximum, however, the district court *must* first certify that the case involves "complex" or "extended" representation. 18 U.S.C. §3006A(d)(3). Second, the district court must conclude that the amount is necessary to provide Counsel with fair compensation.

A case may be considered "complex" if the legal or factual issues in a case are unusual, thus requiring the expenditure of more time, skill and effort by the lawyer than would normally be required in an average case. See Section §230.23.40(b) of the

Guidelines. A case may be considered "extended" if more time is reasonably required for total processing than the average case, including pre-trial and post-trial hearings. *Id.*

## DISCUSSION

### This Case Was Complex

Under the Guidelines, in order to approve compensation in an amount in excess of the statutory maximum, I must first find that the representation was either complex or extended. This case was complex for several reasons.

First, the very nature and number of charges involved in this case required Counsel to expend more time, skill and effort than normally required in the average case. This case commenced when the grand jury issued an Indictment **[DE # 44]** naming Defendant and five (5) co-defendants. The Indictment contained two (2) counts. The government charged Defendant and the codefendants with conspiracy to possess with intent to distribute cocaine and attempted possession of cocaine. Defendant faced a maximum sentence of forty (40) years imprisonment for Count I and forty (40) years imprisonment for Count II.

Second, this case was extremely document intensive. The case "involved significant effort in marshaling and analyzing live witness testimony and cell phone records." (Letter of Explanation at 1). "It was significant that [Defendant] was not heard on any recordings, and nothing incriminating was found on his person or in the white Ford SUV at the time of the attempted buy. The critical evidence which linked [Defendant] to the conspiracy was the undercover agent's assertion that before the attempted buy he was told by a co-conspirator that the buyers were 'clients' of [Defendant] and his companion, co-defendant Sanchez. The defense completely rejected the co-conspirator statement and intended to prove that cell

records (from seven phones seized at the time of the arrests), showed that [Defendant] and Sanchez never had contact with the buyers, but the co-conspirator did. This proof was difficult to obtain and establish and eventually experts were needed to analyze the cell phones and records." (Letter of Explanation at 1-2). The volume of records which Counsel had to review in order to effectively represent Defendant rendered this case more complex than the average case.

Third, the representation of Defendant required Counsel to attend a number of hearings in this case. Plaintiff made appearances at a detention hearing (6/10/10), an arraignment proceeding (6/21/10) and a change of plea hearing (1/3/11). Counsel also appeared at a hearing regarding the need for investigators in this case (1/3/11) and at a sentencing hearing (3/5/11).

Although Counsel "had to fully prepare for trial" because "until the last moment, [he] expected it would go forward", Defendant eventually entered a guilty plea. (Letter of Explanation at 1). "The prosecution did not accept the defense version of events until just before trial, and at that time a plea agreement was reached." (Letter of Explanation at 1). Defendant entered a guilty plea to Count I of the Indictment. **[See DE # 219]**. Defendant was sentenced to a term of forty (40) months imprisonment. **[See DE # 219]**.

It is clear from the record that the legal and factual issues in this case were unusual. Consequently, I conclude that this matter required the expenditure of more time, skill and effort by Counsel than would normally be required in the average case. As I have concluded that the representation provided by Counsel was complex, I must review the voucher to determine the appropriate amount for which Counsel should be compensated in excess of the $9,700.00 statutory maximum.

### *Voucher Amount - Administrator's Review*

The Court's CJA administrator first reviewed the voucher for compliance with the Guidelines and mathematical accuracy prior to my review. Counsel requested compensation for 4.1 in-court hours totaling $512.50.

The CJA administrator made no changes to the in-court hours listed in the voucher. The CJA administrator also reviewed the 124.4 out-of-court hours sought by Counsel. Counsel sought compensation for 22.0 hours for "Interviews and conferences" and 16.0 hours for "Obtaining and reviewing records." Counsel incurred 2.4 hours performing "Legal research and brief writing" and 14.4 hours for "Travel time." Counsel also sought compensation for 69.6 hours for "Investigative and Other work."

The CJA administrator made no changes to the out-of-court hours listed in the voucher. Counsel sought only $2.10 in compensation for expenses. The CJA administrator concluded that the overall total amount documented by Counsel in the voucher was $16,064.60.

### In-Court Hours[1]

Counsel sought 4.1 in-court hours totaling $512.50. Again, the CJA administrator made no change to either of these figures. I approve the amount of $512.50 as reasonable.

### Out-of-Court Hours

In the voucher, Counsel sought 124.4 out-of-court hours, totaling $15,550.00. In initially reviewing Counsel's voucher application, I was immediately struck by the extremely

---

[1] The undersigned defers to the Court Clerk to verify all in-court time and expense allowances.

large number of entries Counsel included for reviewing docket entries. Counsel's voucher contained pages of the following entries, for example:

| | | |
|---|---|---|
| 6/10/2010 | review DE 21 | 0.1 hour |
| 6/10/2010 | review DE 22 | 0.1 hour |
| 6/10/2010 | review DE 22 | 0.1 hour[2] |
| 6/12/2010 | study DE 24 - 31 | 0.2 hours |
| 6/15/2010 | review DE 32 | 0.1 hour |
| 6/15/2010 | review DE 33 | 0.1 hour |
| 6/15/2010 | review DE 34 | 0.1 hour |

After reviewing Counsel's submission, I requested that Counsel come to chambers to explain these vague entries. On June 16, 2011, Counsel and I met and discussed my concerns regarding the significantly large number of entries for reviewing docket entries included in the voucher.

During our meeting, Counsel provided little specific information about the time he actually spent reviewing of these individual entries. Rather, Counsel generally explained that he spent time reviewing each and every document in the case. Counsel, of course, is able to request compensation for the time that he spent reviewing documents. It is clear, however, that Counsel's voucher overstates the time that Counsel should have incurred in reviewing the docket entries in this case.

---

[2] This is not a typographical error. Counsel's voucher contains two identical entries for reviewing DE # 22.

The undersigned recognizes that this case was somewhat document intensive, however, it is clear that Counsel routinely charged 0.1 hour for reviewing each docket entry in this case. As an example, Counsel billed 0.1 hour each for reviewing docket entry # 21 and 22.[3]  A review of these docket entries reveal that they are identical Notice of Appearances filed by a co-counsel in the case. These documents consist of a mere three (3) lines.  Review of these docket entries did not require anything more than Counsel glancing at the document for a few seconds and then moving onto the next document without pause.

Where the cumulative total time Counsel spent reviewing the docket entries amounted to less than six (6) minutes, Counsel should not have billed 0.1 hour per entry regardless of the number of docket entries Counsel reviewed.  This practice is not appropriate.  Counsel is obligated to bill only the total amount of time actually spent on a matter.  He is not permitted to engage in task billing.

Reviewing the voucher and time sheets reflects that Counsel engaged in this practice extensively in this case.  Counsel's submission includes ninety-nine (99) similar entries for reviewing various docket entries.  Counsel seeks compensation for reviewing each of these docket entries, which range from 0.1 hour to 0.2 hours each.  Because Counsel engaged in inappropriate task billing, I recommend that the total number out-of-court hours for which Counsel should be compensated for reviewing docket entries should be reduced by 5.2

---

[3] Counsel also billed for reviewing docket entry # 22 twice.  This second entry is duplicative and must be deleted.

hours[4] for a total of $650.00.

Moreover, my review of the time for which Counsel seeks reimbursement reveals another inappropriate practice - Counsel sometimes double-billed his time. Counsel's submission reflects that Counsel would sometimes bill, first, for authoring a document and then, second, for reviewing it. For example, Counsel seeks reimbursement for the following entries:

| | | |
|---|---|---|
| 7/9/2010 | prepare sealed mot | 0.4 hours |
| 7/12/2010 | review DE 74, 75 | 0.1 hours |

My close review of the docket reveals that DE # 74, which Counsel sought time for reviewing on July 12, 2010, is actually the "sealed mot[ion]" which Counsel had drafted only three days before. Again, this is not appropriate. I note that this practice happened quite a few times:

| | | |
|---|---|---|
| 11/9/2010 | prepare ex parte mot | 0.8 hours |
| 11/10/2010 | review DE 132, 133 | 0.1 hour |
| *** | | |
| 11/18/2010 | prepare sealed mot | 1.2 hours |
| 11/18/2010 | review DE 144 - 146 | 0.1 hour |
| *** | | |
| 12/8/2010 | prepare ex parte mot | 1.7 hours |
| 12/9/2010 | review DE 159 - 162 | 0.1 hour |

---

[4] I have reviewed each of the ninety-nine "review DE" entries in the voucher. Counsel billed a total of 10.4 hours for these entries. I recommend that this total be reduced by half, for a total reduction of 5.2 hours.

To Counsel's credit, during the meeting in chambers, he agreed that this practice was inappropriate. Accordingly, I deduct 0.4 hours for these duplicative entries, totaling $50.00, from the voucher.

In sum, I recommend that the amount which Counsel seeks for out-of-court hours should be reduced by $700.00. Upon review of the docket and file in this case as well as Counsel's voucher application and his explanations concerning the out of-of-court hours included in the voucher, I conclude that my reduction of the number of out-of-court hours Counsel seeks from 124.4 hours to 118.8 hours results in fair compensation for Counsel. After making the reductions identified above, I recommend that Counsel be paid a total of $14,800.00 for his out-of-court hours.

In making this recommendation, I have been mindful that when considering awards to Counsel under the CJA, courts have long recognized that there is an inherent tension between the policies underlying the CJA: "[o]n the one hand, representing indigent defendants is a form of public service; thus, the [CJA] was never intended to provide full compensation for an attorney's services or to provide fees equal to those charged in private practice. . . . On the other hand, the Act was also intended to provide indigent defendants with meaningful representation by competent counsel". *United States v. Mukhtaar,* 2008 WL 2151798, at * 2 (S.D. N.Y. May 21, 2008) (citations omitted). As other courts have explained, the CJA "was intended to partially alleviate the financial burden associated with provision of these services which had been traditionally provided pro bono. The spirit of the statute is lost once the CJA representation of indigent defendants loses its essentially pro bono nature." *United States v. Diaz,* 802 F.Supp. 304, 307 (C.D. Cal. 1992) (quoting *United*

States v. Carnevale, 624 F.Supp. 381, 383 (D. R.I. 1985)). In considering these principles with respect to the instant case, I conclude that an award of $14,800.00 for out-of-court hours, is fair, although admittedly not full compensation for Counsel's services.

### Expenses

Counsel sought $2.10 in "Other Expenses." The CJA administrator did not make any changes to this amount and I hereby recommend payment of the amount of $2.10 as requested by Counsel.

### CONCLUSION

I commend Counsel for his willingness to take this appointment; the undersigned is appreciative of his efforts. Notwithstanding this appreciation, as I have often quoted, when appropriate and in the spirit of the CJA: "What is commendable, however, is not necessarily compensable." U.S. v. Smith, 76 F.Supp.2d 767, 769 (S.D. Texas 1999). It is with this sentiment in mind that I recommend that some of the time incurred by Counsel be considered non-reimbursable.

To be clear, I am not making this recommendation for a lack of appreciation, rather, it is because the courts have the inherent obligation to ensure that claims for taxpayer provided monies are properly spent. As I explained above, however, because the representation in this case was complex, I recommend that Counsel be reimbursed for an amount in excess of the statutory maximum of $9,700.00 in this case. Based upon my review of the time sheets, the April 6, 2011 Letter of Explanation, the docket and filings in this case, I RECOMMEND that Counsel be paid $15,314.60 as fair and final compensation for his work in this case.

In accordance with 28 U.S.C. §636(b)(1), the parties shall have fourteen (14) days from receipt of this Report and Recommendation to serve and file any written objections with the Honorable Jose E. Martinez, United States District Judge.

Signed this 29 day of June, 2011.

PETER R. PALERMO
SR. UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
    Michael Zelman, Esq.
    Lucy Lara, CJA administrator